UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| OMORUYI NATHANIEL OBASOGIE, ) <br> ) <br> Petitioner ) <br> ) <br> v. ) <br> ) <br> JEFFREY NORMAN, *et al*., ) <br> ) <br> Respondent. ) | Case No. 4:15 CV 1675 CAS / DDN |

## REPORT AND RECOMMENDATION

This action is before the Court upon the amended petition of Missouri state prisoner Omoruyi Nathaniel Obasogie for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action was referred to the undersigned Magistrate Judge for consideration and a recommended disposition pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, the undersigned recommends the petition for a writ of habeas corpus be denied.

## I. BACKGROUND

On December 14, 2010, in the Circuit Court of St. Louis County, a jury found petitioner Obasogie guilty of first-degree burglary, second-degree assault, and two counts of armed criminal action. Petitioner was sentenced on February 4, 2011, to 3 terms of 12 years and one term of 7 years, all to be served concurrently.

Petitioner directly appealed the circuit court judgment, but the Missouri Court of Appeals affirmed without a published opinion. *State v. Obasogie*, 370 S.W.3d 888 (Mo. Ct. App. 2010). Petitioner then filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. The trial court denied the motion after a hearing, and the Court of Appeals affirmed. *Obasogie v. State*, 457 S.W.3d 793 (Mo. Ct. App. 2014). On December 7, 2015, petitioner filed his original federal habeas petition.

The facts supporting the jury's verdict were described by the Missouri Court of Appeals thus when ruling petitioner's motion for post-conviction relief:

> At about 1:00 a.m. on November 2, 2009, Movant, Anwar Randle, and an unidentified man broke into a home occupied by Cameron Bass and Kena Coleman, who were asleep at the time. Both Bass and Coleman knew Randle but did not know Movant or the third man. Bass and Coleman awoke, and Coleman went into the hallway to investigate while Bass hid in the bedroom closet. Coleman first saw Randle coming out of a bedroom door. The lights were on in the laundry room and in the kitchen. Coleman then saw Movant and the third man, armed with a small handgun and a shotgun respectively, enter her home through the back door. She screamed at them to get out of her house. Randle shoved Movant into her bedroom. Movant and Randle then entered the bedroom looking for Bass. Movant pointed the handgun at Bass and told him to get out of the closet. Movant fired the gun but struck no one. Bass fled through the closet into an adjacent bedroom. Randle and the unidentified man pursued him and beat him with the butt of a shotgun and a glass bottle. Eventually, the three intruders left.
>
> Bass then called the police. The resulting police dispatch stated that three black males had entered a residence and shots had been fired. A St. Louis County police officer observed three black males, Movant and the other two intruders, driving in the rea. The officer initiated a traffic stop on the vehicle. Movant, who was driving the car, pulled over, and the unidentified man exited and fled on foot. Movant and Randle remained in the car and sped away at high speed. They were later apprehended by multiple police officers in a parking lot.

*Obasogie*, 457 S.W.3d at 795.

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner's amended habeas corpus petition alleges the following grounds for relief:

(1)   The trial court erred in overruling petitioner's motions for judgment of acquittal and sentencing petitioner for the felony of burglary in the first-degree when no evidence was presented to prove the use of a dangerous instrument or deadly weapon.

(2)     The trial court erred in trying petitioner when the name and possessor of the home allegedly burglarized on the information for the burglary Count 1 did not match the jury instruction for that Count.  This also affected the associated armed criminal action charge.

(3)     The prosecutor misled and misdirected the jury by misstating the law about the use of a deadly weapon or instrument in a burglary crime, resulting in a violation of due process.

(4)     The trial court erred in allowing petitioner to be convicted of armed criminal action in connection with assault in the second-degree.

(5)     Petitioner's due process rights were violated by not giving an instruction on assault in the third-degree.

(6)     The entire arrest, complaint, and indictment were based on perjured statements and material misrepresentation: namely that one of the victims was the owner of the residence that was burglarized.  The State knowingly used this false information and perjured information and testimony to secure petitioner's conviction.

(7)     Petitioner's attorney was ineffective for failing to contact witness Anwar Randle, whom petitioner claims was key to his defense and would refute the State's case, and who supplied a declaration dated November 17, 2010.

(8)     The trial court erred in finding petitioner guilty of being a prior offender, based on a conviction which resulted in a suspended imposition of sentence, and petitioner's counsel was ineffective for failing to object to the trial court's finding.

(9)     The trial court erred in sentencing petitioner to 12 years on burglary in the first-degree, 12 years on the armed criminal action connected to the burglary, 7 years on the assault in the second-degree, and 12 years on the armed criminal action connected with that assault, where petitioner's alleged co-conspirator was acquitted of burglary and sentenced to 5 years on assault in the second-degree, and 7 years on the armed criminal action connected with the assault.

(10)    Counsel was ineffective for failing to investigate the victims' credibility and depose them, unlike his co-defendant's counsel.[1]

---

[1] Enumerated page 15 was not provided by petitioner when he filed his amended petition. (Doc. 8).  Petitioner was notified of this omission and ordered to provide the missing page.  (Doc. 29).  He failed to respond to this order.  Accordingly, the undersigned

3

(11) The trial court lacked the jurisdiction to try and convict petitioner due to its failure to properly arraign petitioner.

(12) Petitioner was never notified nor accorded a proper arraignment and his signature was forged, without his knowledge or consent, on the Arraignment Memorandum. Petitioner was never formally read his charges, informed of the evidence against him, or given the opportunity to request discovery.

(13) Petitioner was denied the disclosure of any and all exculpatory materials. This denial seriously impeded petitioner's right to a fair trial and was a violation of the due process clause. Due to this denial petitioner was unaware of the existence of any evidence against him or any findings at the time of trial.

(14) Prosecuting authorities and officers of the court withheld exculpatory materials as well as other evidence exonerating petitioner. The acts and or omissions of the prosecutor and petitioner's counsel prevented evidence from being used in defense of the accusations against petitioner, resulting in a denial of due process.

(15) Petitioner was prejudiced by the lack of investigation and suggestiveness of prosecutorial procedures, resulting in an irreparable misidentification.

(16) Petitioner's trial counsel was constitutionally ineffective for failing to notify him of an arraignment date, failing to prepare and secure discovery, failing to adequately communicate with petitioner, failing to file any pre-trial motions, failing to investigate the state's witnesses or petitioner's co-defendant, failing to impeach false testimony, failing to object to evidence, failing to inform petitioner that taking the stand would allow the state to bring up his prior convictions, failing to object to the state's questioning about petitioner's prior conviction, allowing the prosecutor to argue evidence not presented at trial, failing to preserve any errors for appeal, failing to challenge the armed criminal action charges, failing to include in his motion for new trial that the evidence was insufficient for burglary in the first degree, failing to request a lesser-included offense instruction on first-degree attempted criminal trespass, failing to prepare jury instructions for the second-degree assault that would clear petitioner of armed criminal action for that

---

considered the amended petition as it was filed. Missing page 15 apparently contained the specific language of Ground 10 and some of the underlying factual support. From the remaining language of the underlying support, stated on page 16, the Court infers the language of his intended Ground 10. (Doc. 8 at 15) ("Had movant's counsel deposed the alleged witnesses/victims, as his co-defendant's counsel did, there could have actually been a true contest of credibility.")

4

court, failing to include this argument in his motion for new trial, and failing to request or submit an instruction on mistaken identity or irreparable misidentification.

(17)   The accumulation of claims—Ground Three, Ground Six, Ground Seven, Ground Twelve, Ground Thirteen, Ground Fourteen, Ground Fifteen, and Ground Sixteen—served to prejudice petitioner, denying him the right to and even the possibility of a fair trial, also violating his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution.

(Doc. 8).

### III.  EXHAUSTION AND PROCEDURAL BAR

State prisoners are required to exhaust their state law remedies before bringing a petition under 28 U.S.C. § 2254 in federal court.  *See* 28 U.S.C. § 2254(b)(1)(A).  If a prisoner "has the right under the law of the State to raise, by any available procedure, the question presented," he has not exhausted his state law remedies.  28 U.S.C. § 2254(c).  In Missouri, an appeal to the intermediate state appellate court sufficiently exhausts state remedies to permit federal habeas review under Section 2254.  *See* Mo. Sup. Ct. R. 83.04; *Randolph v. Kemna*, 276 F.3d 401, 404 (8th Cir. 2002).

It is not sufficient for a petitioner to simply have no remaining procedure for bringing a ground to the state court.  *Humphrey v. Cady,* 405 U.S. 504, 516 (1972); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).  A petitioner must also have fairly presented the substance of each federal ground to the state trial and appellate courts.  *Anderson v. Harless*, 459 U.S. at 6.  If a petitioner has not fairly presented the claim and he has no remaining state procedure available for doing so, any such ground for federal habeas relief generally is barred from being considered by the federal courts.  *Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011); *King v. Kemna*, 266 F.3d 816, 821 (8th Cir. 2001) (en banc).  The doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack.  *See Murray v. Carrier*, 477 U.S. 478, 490–92 (1986).

A petitioner may overcome the procedural bar only by demonstrating either (1) that there is a legally sufficient cause for the default and actual prejudice resulting from

it, or (2) that failure to review the claim would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish cause for a procedural default, petitioner must demonstrate that some objective factor external to his case impeded his efforts to comply with the state procedural requirements. *Id*. at 750-53. Petitioner may, for example, satisfy the cause requirement by showing that attorney error or oversight rose to the level of ineffective assistance of counsel in violation of the Sixth Amendment. *Carrier,* 477 U.S. at 488-89. However, this avenue is precluded and a procedural default will not be excused when the petitioner fails to raise the ineffective assistance claim in his first post-conviction appeal. *Bailey v. Mapes,* 358 F.3d 1002, 1004 (8th Cir. 2004).

On direct appeal, petitioner raised 4 grounds: (1) the trial court erred in admitting in-court and out-of-court identifications, (2) the trial court erred in failing to instruct the jury to disregard improper cross-examination by the state prosecutor, (3) the trial court erred in failing to instruct the jury to disregard the prosecution's argument of facts not in evidence, and (4) the trial court erred in permitting the prosecution to state to the jury that in rendering a verdict they had to decide if two victims were lying or petitioner was lying. (Doc. 28-1 at 20-23). None of these grounds are alleged in the amended federal petition.

In his post-conviction motion, petitioner raised the following grounds at the trial level: (1) the trial court failed to properly arraign petitioner, (2) petitioner was denied any and all exculpatory materials, (3) petitioner was denied the opportunity to call witnesses, (4) the arrest and indictment were based on perjured statements and material misrepresentations, (5) the trial court erred in finding petitioner guilty of being a prior offender, (6) the trial court erred in not giving an instruction on assault in the third degree, (7) the discrepancies between petitioner's conviction and sentencing and his alleged co-conspirator's point to a miscarriage of justice such that petitioner's verdict should be set aside, and (8) petitioner's trial counsel was ineffective for forging petitioner's signature, failing to communicate with petitioner, failing to prepare for trial, failing to file pre-trial motions, failing to object to the state's evidence, failing to advise petitioner not to take the testify and promising his testimony in his opening statement,

6

failing to request instructions for lesser-included offenses and mistaken identity or irreparable misidentification, failing to raise the claim of insufficiency of the evidence, failing to call petitioner's co-defendant as a witness, and failing to file a motion to suppress the in-court and out-of-court identifications of petitioner. (Doc. 28, Ex. 9 at 8-15, 65-100).

After an evidentiary hearing, held on May 24, 2013, (Doc. 28, Ex. 9 at 166),[2] the trial court denied the motion.

On appeal from the denial of post-conviction relief, petitioner raised only the following three grounds: (1) petitioner's direct appeal counsel was ineffective for failing to raise an insufficiency of the evidence argument, (2) the motion court erred in failing to allow petitioner's co-defendant to testify at the evidentiary hearing, and (3) petitioner's trial counsel was ineffective for failing to call this co-defendant as a witness. (Doc. 28-12 at 18-21).

Petitioner has properly exhausted his state court relief procedures only as to his federal habeas grounds (1)[3], (7), and certain specifications of (16), discussed below.

Petitioner has not overcome the procedural bar for the remaining grounds. The failure to brief a claim on appeal constitutes default that gives rise to an adequate and independent state procedural bar to review. *Sweet v. Delo*, 125 F.3d 1144, 1149-50 (8th Cir. 1997). For federal court review to occur, petitioner must show good cause and actual prejudice under *Murray v. Carrier*, 477 U.S. 478 (1986). He has failed to do so.

---

[2] Petitioner's trial counsel testified at this hearing, and petitioner's co-defendant Anwar Randle was ordered to appear. However, because of an error of the Missouri Department of Corrections he was not brought to the hearing. (Doc. 28, Ex. 10 at 10-20).

[3] On appeal, this was characterized as an ineffective assistance of counsel claim, but this Court has liberally construed the state record to find that petitioner fairly presented the claim to the state court and that the state courts had an opportunity to pass on the claim on appeal from petitioner's motion for post-conviction relief. In considering this question in the context of an ineffective assistance of counsel claim, the Court nevertheless considered the merits of the underlying argument, that is, whether there was sufficient evidence to support petitioner's conviction.

7

First, while he raised many grounds in his post-conviction motion, he did not raise the denial of them on appeal, which he had to do in order to bring them into federal court. Petitioner has not shown legally sufficient cause for this default. Absent a showing of cause, this Court need not reach the issue of prejudice. *Zeitvogel v. Delo*, 84 F.3d 276, 279 (8th Cir. 1996).

Second, petitioner has also failed to show that this Court's failure to consider the defaulted grounds would result in a miscarriage of justice. Such a miscarriage of justice would exist if petitioner presented new evidence of actual innocence showing "it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013). While petitioner claims he is actually innocent he has not presented evidence of actual innocence or demonstrated that a jury would have been unreasonable in finding him guilty.

Accordingly, petitioner's claims in Grounds 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15,[4] and 17 have not been exhausted and are procedurally barred.

## IV.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act provides that federal habeas relief may not be granted unless the state court adjudication:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

---

[4] Petitioner alleges in Ground Fifteen that there was a suggestive pretrial identification procedure. (Doc. 1 at 22). The Missouri Court of Appeals reviewed this claim for plain error, as petitioner failed to preserve it before the trial court. (Doc. 28, Ex. E at 3-4, 7). However, an appellate court's review for plain error does not lift the procedural bar to review, and the claim is still procedurally defaulted. *See Clark v. Bertsch*, 780 F.3d 873, 875-76 (8th Cir. 2015).

"A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." *Tokar v. Bowersox*, 198 F.3d 1039, 1045 (8th Cir. 1999).  The issue a federal habeas court faces when deciding whether a state court unreasonably applied federal law is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).  A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (per curiam).

A state court's factual findings are presumed to be correct.  28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010).  Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 182-83 (2011).  Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief.  28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## V. DISCUSSION

### A.   Ground One

Petitioner alleges in Ground One that the trial court erred in overruling his motion for judgment of acquittal, when no evidence was presented to prove he used a dangerous instrument or deadly weapon.  The federal standard for determining the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).  The Missouri Court of Appeals addressed this issue as follows:

> At Movant's trial, Coleman testified as follows:

9

> State: Now, you saw Mr. Randle coming out of the bedroom door here. What else did you see?
>
> Coleman: I saw [Movant] and another guy with dreads come into the back door.
> . . .
> State: And did you see anything in anybody's hand?
>
> Coleman: Yes.
>
> State: And what was that?
>
> Coleman: [Movant] had a small handgun, and the guy with the dreads had a shotgun.

In other words, there was evidence that a person in the house, Coleman, saw Movant armed with a weapon prior to entering the house.

Movant argues that the motion court was incorrect in finding the present case to be distinguishable from *State v. Carpenter*, 109 S.W.3d 718 (Mo. App. 2003) and *State v. Dudley*, 51 S.W.3d 44 (Mo. App. 2001), cases that he relied on in his amended motion. In both of those cases, the defendants were already present in the house when they were first seen by anyone in the house. As the testimony above indicates, Coleman saw Movant and the other unknown defendant, weapons in hand, as they entered her house. Movant asserts that in order to be convicted for armed criminal action in this circumstance, he or the unidentified third man would have had to shoot the back door open or explicitly threaten Coleman by words or by pointing a gun at her. In support of this assertion, Movant relies on dicta in *Carpenter*, 109 S.W.3d at 723, wherein the appellate court opined that the synergistic effect of combining section 569.160.1(3) and section 571.015 was to require that a defendant had to use the weapon to break open the door or to point the weapon at someone in the house and explicitly threaten him or her to compel that person to open the door in order to sustain a conviction for armed criminal action based on first degree burglary under section 569.160.1(3).1

Under the language of the statutes on burglary and armed criminal action, as charged in *Carpenter*, *Dudley* and in the present case, a defendant must have gained entry "by, with, or through the use, assistance, or aid of" the weapon to sustain the armed criminal action count. In both *Dudley* and *Carpenter*, the respective defendants did not use the weapon to break open

10

> a door or a window, and they were both inside the house when first seen by the victims; hence they did not use the weapon to intimidate someone prior to entering the home. Accordingly, the *Carpenter* court held that defendants in those cases did not gain entry "by, with, or through the use, assistance or aid of" the weapon at issue. The dicta in *Carpenter* that defendant would have had to use the gun to break open the door or to display a weapon and explicitly threaten someone to gain entry, was not required by the language of the statute and was not necessary to reach its holding in that case.
>
> In the present case, Movant was openly displaying the gun in his hand as Coleman saw him enter her house. The jury could reasonably infer that there was an implicit threat to Coleman by Movant's display of the gun in his hand; he did not need to point the gun at her or to make an explicit verbal threat. There was sufficient evidence to sustain the conviction for armed criminal action, Count II, associated with the burglary count.

*Obasogie*, 457 S.W.3d at 797-98.

On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 132 S.Ct. 2, 4 (2011) (per curiam).

In ruling Ground 1, the Missouri courts did not unreasonably determine the facts or unreasonably apply federal law. Accordingly, Ground 1 is without merit.

**B.     Grounds Seven and Sixteen**

Petitioner alleges in Ground Seven that his trial attorney was ineffective in failing to contact witness Anwar Randle and in Ground Sixteen that his attorney was ineffective for a series of alleged failures. The Supreme Court has determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.

11

First, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Id*. at 687–88. There is a strong presumption that counsel has rendered constitutionally effective assistance. *Id*. at 690; *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987). A petitioner must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. Counsel has "wide latitude ... in making tactical decisions;" thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. Counsel's strategic choices made after thorough investigation are virtually unchallengeable. *Id.* at 690–91. Further, decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment. *Id.* A reviewing court must acknowledge that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id*. at 689–90; *Boss v. Ludwick*, 760 F.3d 805, 811 (8th Cir. 2014).

Second, petitioner must demonstrate actual prejudice by counsel's deficient performance. *Id*. at 687. A reviewing court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id*. at 696.

Anwar Randle was petitioner's co-defendant. Petitioner relies on a documentary declaration purportedly made and signed, which contains a case caption with petitioner's name, but Randle's case number. The declaration does not appear to ever have been filed. It states the following:

> I, Anwar S. Randle, under penalties of perjury, do hereby state that if called upon to testify in a court of law I would be competent to testify as to the matters set forth below, of which I have personal knowledge.
>
> 1. In regard to the offenses Omoruyi Obasogie is accused of committing in the above-referenced cause, on November 2, 2009, in the County of St. Louis, I have first-hand knowledge of the factual occurrences.
>
> 2. At no point did Mr. Obasogie exit his vehicle and enter the residence located at 10146 Earl Drive in unincorporated St. Louis County. Mr. Obasogie never encountered nor came in contact with Cameron Bass or

12

> Kena Coleman. Mr. Obasogie never possessed a weapon or firearm in regard to these alleged offenses.
>
> 3. Mr. Obasogie was not a party to any crime or discussion to commit a crime in regard to the offense he is being charged with. No one in the vehicle Mr. Obasogie was driving had a weapon or exited the vehicle that Mr. Obasogie was driving except for myself in regard to these alleged offenses.
>
> 4. Mr. Obasogie did not try to flee or [elude] officers. Neither he nor I noticed the police behind us initially, because we were in a state of shock and fear after Cameron Bass shot at me. Mr. Obasogie is totally innocent of these charges as he nor myself committed any crime in regard to the above cause.

(Doc. 8, Ex. 6 at 10).

When petitioner raised the ineffective-assistance-of-counsel claim in his motion for post-conviction relief, the trial court ordered the production of Anwar Randle from the Missouri Department of Corrections as a witness. Due to a clerical error, Mr. Randle was not produced, but petitioner's trial counsel did appear. (Doc. 28, Ex. 11). At the hearing, his trial counsel testified that petitioner said he would provide him with Mr. Randle's contact information in Chicago, but petitioner never gave him that information. Trial counsel testified that he asked petitioner several times for Mr. Randle's contact information, "but he never gave us a phone number or address or any way to find him in Chicago." (*Id.* at 24). He testified that a day or so before trial, petitioner gave him the purported declaration described above, but concluded it was no use to petitioner because it was inadmissible hearsay. (*Id.* at 24-33). At the same hearing, petitioner testified that he gave accurate contact information for Mr. Randle to his trial counsel. (*Id.* at 57).

The trial court found the testimony of petitioner's trial counsel to be credible, rather than the testimony of petitioner. It also made the following factual findings, to which the Court of Appeals deferred, ruling as follows:

> The motion court, which also presided over Randle's trial, noted that it was not credible that Randle would have testified at Movant's trial given that Randle "jumped bond" in his own case and had bondsmen's agents and police officers actively searching for him, and "was completely unavailable

13

> to everybody" including the court, and "[n]obody could reasonabl[y] think otherwise."
>
> The motion court did not clearly err in denying Movant's claim for post-conviction relief that trial counsel was ineffective for failing to investigate Randle and to call him as a witness, nor did the motion court clearly err or abuse its discretion in not continuing the evidentiary hearing to obtain Randle's testimony. Randle's testimony was not necessary for the motion court to rule on Movant's amended motion for post-conviction relief. The motion court found trial counsel credible that Movant failed to provide him with Randle's contact information, which clearly refutes Movant's allegations. It explicitly found Movant to be not credible. Based on the record before the motion court, the motion court could reasonably conclude that Randle would not have testified at trial, rendering his proposed testimony irrelevant. Movant clearly is not entitled to relief, and appellate courts will not order a useless remand in such a circumstance.

*Obasogie*, 457 S.W.3d at 800-01.

This Court must defer to the state court's findings of fact. Petitioner has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness, to overcome the strong presumption that counsel rendered constitutionally effective assistance. *Strickland*, 466 U.S. at 690; *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987). Nor has petitioner demonstrated actual prejudice, as it was reasonable from the record for the state courts to conclude that Mr. Randle was unavailable to serve as a witness at the time of petitioner's trial, even if petitioner's trial counsel had been able to contact him.

In Ground Sixteen, petitioner alleges that his trial counsel rendered constitutionally ineffective assistance by failing to notify him of an arraignment date, failing to prepare and secure discovery, failing to adequately communicate with petitioner, failing to file any pre-trial motions, failing to investigate the state's witnesses or petitioner's co-defendant, failing to impeach false testimony, failing to object to evidence, failing to inform petitioner that taking the stand would allow the state to bring up his prior convictions, failing to object to the state's questioning about petitioner's prior conviction, allowing the prosecutor to argue evidence not presented at trial, failing to

14

preserve any errors for appeal, failing to challenge the armed criminal action charges, failing to include in his motion for a new trial that the evidence was insufficient for burglary in the first degree, failing to request a lesser-included offense instruction on first-degree attempted criminal trespass, failing to prepare jury instructions for the second-degree assault that would clear petitioner of armed criminal action for that court, failing to include this argument in his motion for new trial, and failing to request or submit an instruction on mistaken identity or irreparable misidentification.

Applying the *Strickland* standard discussed above, a petitioner is entitled to federal habeas corpus relief only upon a showing that counsel's performance fell below an objective standard of reasonableness and actual prejudice resulted from counsel's deficient performance. 466 U.S. at 687-88. With the exception of the witness and sufficiency of the evidence claims discussed above, the specific sub-claims within Ground Sixteen are defaulted, as they were not presented on appeal in Missouri state courts, and petitioner has not shown good cause and actual prejudice to overcome the procedural bar to this Court's reviewing them. To the extent the Missouri Court of Appeals addressed the underlying merits of three more of the claims, the actual prejudice prong of petitioner's ineffective assistance of counsel claim still fails.

The Court of Appeals indirectly addressed the failure to request an instruction on mistaken identity sub-claim, in deciding that substantively, the claim that the identifications were unreliable was without merit. (Doc. 28, Ex. 8 at 7-8) ("There is no indication that Bass and Coleman used anything but their own recollections to identify [petitioner]. The show-up identifications took place only minutes after the incident, and neither Bass nor Coleman showed uncertainty or reservations in making the identifications.").

The Court of Appeals also indirectly addressed the failure to object to the State's questioning about petitioner's prior convictions as follows:

> Defendant contends that the trial court erred by allowing the State to solicit an impermissible level of detail about his prior convictions. Prior convictions may be used to impeach a witness, but the State may not delve into the details of any conviction; only the fact of the conviction may be

15

proven. *See State v. Scott*, 459 S.W.2d 321, 323 (Mo. 1970); *State v. Jones*, 809 S.W.2d 45, 46 (Mo. App. 1991). This Court has found prejudicial error in cross-examinations on prior convictions when prosecutors have discussed the name and age of the victim, gone into details of the crime itself, emphasized the convictions through repetitive questioning, and used the prior convictions as support in closing argument. *See State v. Sanders*, 634 S.W.2d 525, 526–28 (Mo. App. 1982); *State v. Phelps*, 677 S.W.2d 418, 419–21 (Mo. App. 1984); Scott, 459 S.W.2d at 322–24. However, the prosecutor may "elicit the nature, dates and places of the [prior offenses] and the sentences resulting therefrom." *State v. Silcox*, 694 S.W.2d 755, 757 (Mo. App. 1985). We have allowed more thorough examinations when the questioning revolves around the court proceedings, not the facts of the crime. *Jones*, 809 S.W.2d at 46.

Defendant complains that the State delved too far with respect to two prior convictions. First, Defendant acknowledged pleading guilty to carrying a concealed weapon, but the prosecutor went on to solicit that the weapon was a .45 caliber semiautomatic pistol. Defense counsel did not object, and the prosecutor ended the inquiry. On this detail alone we cannot say that the trial court's inaction was plain error. Second, Defendant complains that he acknowledged pleading guilty to third-degree assault, but the prosecutor still asked if Defendant had "attempted to cause physical injury to [the girlfriend] by hitting her on the head, face and body." The trial transcript reveals that Defendant's evasiveness invited the State's elaboration. Defendant claimed not to remember the charge, asking "Was that something minor?" and stating "I don't know what that was … It was a long time ago so it might not be fresh in my mind." It was at this point, in response to Defendant's avoidance, that the State sought to refresh Defendant's memory and clarify the nature of the offense. The State is allowed to "test and challenge" statements a defendant makes during cross-examination. *Jones*, 809 S.W.2d at 46–47.

Finally, Defendant complains that the prosecutor reiterated Defendant's prior convictions by stating "[s]o you plead guilty to carrying a gun, you plead guilty to beating somebody." The record reveals that defense counsel objected at this point, and at side bar the trial court weighed the matter thoughtfully. The court deemed that Defendant had invited much of the assault inquiry himself by his evasiveness, but ultimately it instructed the State to end that line of questioning and move on. We find no plain error on this record. Point denied.

.

16

(Doc. 28, Ex. 8 at 8-9). Petitioner's trial counsel *did* object to the prosecutor's cross-examination, and the trial court concluded that the prosecutor's line of questioning to that point was justified by petitioner's evasiveness. The objection as to further questioning was sustained. Even if petitioner's trial counsel had objected to the prosecutor's questioning at an earlier point, it is not reasonably likely that this would have changed the outcome of the case, or even that the objection would have been sustained.

Finally, with respect to petitioner's argument about counsel allowing the prosecutor to argue evidence not presented at trial, the Court of Appeals reasoned that:

> Defendant asserts that the trial court should have instructed the jury sua sponte to disregard the prosecutor's statements in closing argument regarding the unknown third perpetrator. The prosecutor indicated that the State had not identified or caught the third perpetrator. He said that Defendant or Defendant's counsel (or both) were in contact with Randle, because Defendant's counsel referenced Randle's current residence at trial, and that Randle would know who the third perpetrator was. Defendant asserts that this conclusion was not based on any facts in evidence—the only mention of Randle's location came in through defense counsel's cross-examination of Coleman. While prosecutors have wide latitude in making their closing arguments, they cannot argue based on facts outside the evidence, which occurred here. *See State v. Hall*, 319 S.W.3d 519, 522–23 (Mo. App. 2010); *State v. Storey*, 40 S.W.3d 898, 911 (Mo. banc 2011).
>
> The State responds that, although a prosecutor may not argue facts outside the record, he is allowed to argue the evidence and all reasonable inferences from the evidence. *State v. Brown*, 337 S.W.3d 12, 14 (Mo. banc 2011). Here, the prosecutor, in explaining the absence of the third suspect, merely expressed a reasonable inference that Defendant and his counsel knew the location of Mr. Randle, who likely knew the identity of the third assailant. Moreover, a conviction will only be reversed due to plain error in a closing argument when the erroneous argument had a decisive effect on the jury's determination. *State v. Taylor*, 298 S.W.3d 482, 509–10 (Mo. banc 2009). The prosecutor's statements will have a decisive effect when there is a reasonable probability that the verdict would have been different had the error not been committed. State v. Deck, 994 S.W.2d 527, 543 (Mo. banc 1999). While arguably irrelevant, the prosecutor's comment was not clearly beyond the generous boundaries accorded to counsel in closing arguments such that the trial court's failure to strike it - sua sponte, no less – rises to the level of plain error. We see no reasonable probability that the

17

> verdict would have been different absent this particular remark. Point denied.

(Doc. 28, Ex. 8 at 10). Even if petitioner's trial counsel had objected to the prosecutor's closing argument, it is not reasonably likely that this would have changed the outcome of the case.

This Court should defer to the state courts' resolution of each of these issues, and petitioner has not shown that his trial counsel's performance fell below an objective standard of reasonableness or that he was actually prejudiced.

Grounds 7 and 16 are without merit, because in ruling them the Missouri courts did not unreasonably determine the facts or unreasonably apply federal law.

## VI.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY RECOMMENDED** that the petitions of Omoruyi N. Obasogie for a writ of habeas corpus **be denied**.

Because petitioner has made no substantial showing that he was deprived of a constitutional right,

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be denied. 28 U.S.C. § 2253(c)(2).

The parties have until March 28, 2019, to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

/s/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 18, 2019.